1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

DOWNTOWN ACTION TO SAVE HOUSING, a Washington non-profit corporation,

Plaintiff,

v.

MIDLAND CORPORATE TAX CREDIT XIV, LP, MIDLAND CORPORATE TAX CREDIT XVI, LP, MIDLAND CORPORATE TAX CREDIT VII, LP, and BFIM SPECIAL LIMITED PARTNER, INC., collectively Delaware partnerships located in Massachusetts,

Defendants.

No. 2:18-cv-138

COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Downtown Action to Save Housing, a Washington non-profit corporation, by and through its undersigned attorneys and for its Complaint against Defendants Midland Corporate Tax Credit XIV, LP, Midland Corporate Tax Credit XVI, LP, Midland Corporate Tax Credit VII, LP, and BFIM Special Limited Partner, Inc., which are each Delaware partnerships located in Massachusetts, states and alleges as follows:

COMPLAINT AND JURY DEMAND - 1
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

## I.     PARTIES, JURISDICTION AND VENUE

1.     This action seeks, among other things, a declaration of the rights and obligations of parties to three limited partnership agreements, all of which concern limited partnerships formed in connection with the development, finance, construction, ownership and operation of affordable housing developments, specifically apartment complexes, to be managed and run by Downtown Action to Save Housing ("**D.A.S.H.**") as the General Partner of the limited partnerships.

2.     D.A.S.H. is a well-established, long-standing, and well respected non-profit corporation organized under the laws of the State of Washington, with a principal place of business in Bellevue, Washington, whose mission is to create and preserve affordable communities for a variety of income levels with the goal of financial advancement and sustainability for individuals and families.

3.     In each of the three limited partnership agreements at issue here, D.A.S.H. is designated as the General Partner and has, in fact, been the General Partner of the limited partnerships.

4.     The three limited partnership agreements at issue concern, respectively, the following limited partnerships: (1) Kenmore Senior Associates Limited Partnership ("Kenmore Senior"); (2) Kenmore Family Associates Limited Partnership ("Kenmore Family"); and (3) Mountain View Family Associates Limited Partnership ("Mountain View Family").  Kenmore Senior, Kenmore Family and Mountain View Family are collectively referred to hereafter as the "Partnerships."

COMPLAINT AND JURY DEMAND - 2
(18-cv-138)

160 ia30bk16w2

5.      Each of the Partnerships own and operate separate, distinct affordable housing developments, or apartment complexes, specifically as follows: (1) Kenmore Senior owns and operates Heron Landing Senior Apartments ("Heron Landing"); (2) Kenmore Family owns and operates Heron Run Apartments ("Heron Run"); and (3) Mountain View Family owns and operates Mountain View Apartments ("Mountain View").  Heron Landing, Heron Run and Mountain View are collectively referred to hereafter as the "Apartment Complexes."

6.      Heron Landing is located in Kenmore, Washington, which is in King County; Heron Run is located in Kenmore, Washington, which is in King County; and Mountain View is located in Tukwila, Washington, which is in King County.

7.      Midland Corporate Tax Credit XIV, LP is a limited partnership located in Boston, Massachusetts and is organized pursuant to the laws of the State of Delaware ("Midland XIV").

8.      Midland XIV is a Limited Partner in Kenmore Senior.

9.      Midland Corporate Tax Credit XVI, LP is a limited partnership located in Boston, Massachusetts and is organized pursuant to the laws of the State of Delaware ("Midland XVI").

10.     Midland XVI is a Limited Partner in Kenmore Family.

11.     Midland Corporate Tax Credit VII, LP is a limited partnership located in Boston, Massachusetts and is organized pursuant to the laws of the State of Delaware ("Midland VII").

12.     Midland VII is a Limited Partner in Mountain View Family.

COMPLAINT AND JURY DEMAND - 3
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

13.     BFIM Special Limited Partner, Inc., which is (upon information and belief) a successor to Midland Special Limited Partner, Inc., ("BFIM") is a corporation located in Boston, Massachusetts and is organized pursuant to the laws of the State of Delaware.

14.     BFIM is a Special Limited Partner in the Partnerships.  BFIM, Midland XIV, Midland XVI and Midland VII are collectively referred to hereafter as the "Investment Partnerships."

15.     BFIM is, upon information and belief, affiliated with Boston Financial Investment Management, which is located in Boston, Massachusetts and manages approximately $8.5 billion in financial investments comprising over 1,450 apartment complexes and 140,000 apartment units.

16.     Upon information and belief, Boston Financial Investment Management—who manages 126 corporate investor funds; 150 institutional investors—controls the Investment Partnerships, which include corporate and/or institutional tax credit investors.

17.     The matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, and is between citizens of different States; thus, there is complete diversity in this action.

18.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 2201(a).

19.     A substantial part of the events or omissions giving rise to D.A.S.H.'s claims occurred in this Judicial District, and the property that is the subject of this action is situated in this Judicial District.

20.     Venue is appropriate in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2).

COMPLAINT AND JURY DEMAND - 4
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

## II.     FACTUAL ALLEGATIONS

### A.     The Low-Income Housing Tax Credit Program.

21.     The low-income housing tax credit ("Tax Credit") is a federal tax credit that is generated from certain multi-unit housing projects that satisfy a number of requirements, that include, but are not limited to, an agreement by the property owner to only rent certain units to households with incomes below certain limits at rents that do not exceed certain federally-mandated limits for a period of at least 15 years after the Property is placed in service (the "Compliance Period").

22.     The Tax Credit program is governed by Section 42 of the Internal Revenue Code, certain Treasury Regulations, guidance from the Treasury Department and the Internal Revenue Service, and state-specific procedures contained in various documents adopted by designated housing agencies in each state (collectively, the "Tax Credit Rules").

23.     In a typical low-income housing project, the project owner is organized as a limited partnership or limited liability company (here, the Partnerships), a developer (which may be a for-profit or non-profit organization, here D.A.S.H.) acts as General Partner or Managing Member of the owner entity, controlling the day-to-day operations of the project, and a third-party tax credit investor is admitted as a Limited Partner or an Investor Member (here, the Investment Partnerships), agreeing to contribute capital to the owner entity (the Partnerships) in exchange for an allocation of the Tax Credits (and related tax losses) available to the project owner (the Partnerships).

COMPLAINT AND JURY DEMAND - 5
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

24.     The Tax Credit Rules provide that only the project owner of a qualified low-income housing project can qualify for Tax Credits, and only if the project owner meets certain terms and conditions.

25.     The project owner collects the Tax Credits during the fifteen-year Compliance Period.  After the end of the Compliance Period, Tax Credits are no longer available.  As a result, by the end of the Compliance Period, the investor member or limited partner has realized the vast majority of economic benefits it bargained for and expected from the project.

26.     A purchase or buyout option is often one of the primary economic incentives for the developer or general partner in a typical low-income housing project.  While the investor member or limited partner receives a substantial yearly return on its investment over many, many years in the form of Tax Credits and other economic benefits, including tax losses from the owner entity, the developer or general partner provides development and management services to the project during the Compliance Period for modest fees; thus making the purchase or buyout option a primary economic incentive and benefit.

27.     The developer undertakes its investment of time, resources and money, as well as its duties and obligations as general partner, with the expectation that it will have the option to acquire the limited partner or investor member's interests in the operation of the business (here, the Partnerships) as an on-going concern or acquire the real estate itself at the end of the Compliance Period.

28.     In this case, D.A.S.H.—in furtherance of its non-profit mission to create, sustain and preserve affordable housing for communities in desperate need of affordable housing—invested in the Partnerships in exchange for certain option rights (specifically

COMPLAINT AND JURY DEMAND - 6
(18-cv-138)

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

160 ia30bk16w2

Buyout Options) and it has dutifully served as the General Partner of the Partnerships with these understandings and expectations.

29.     Without the rights afforded to it through the Buyout Options, D.A.S.H. would have much less incentive to participate in the development of the low-income housing developments and would be deprived of an important right to which the Investment Partnerships had agreed from inception of the Partnerships.

**B.     The Partnerships and Apartment Complexes.**

**1.     <u>Kenmore Senior and Heron Landing</u>.**

30.     In 1998, Kenmore Senior was formed with D.A.S.H. as the General Partner.

31.     Midland XIV and BFIM's predecessor, Midland Special Limited Partner, Inc., collectively invested $2,369,686 in Kenmore Senior so that D.A.S.H. could, on behalf of Kenmore Senior as its General Partner, finance, develop, and construct Heron Landing.

32.     In exchange, Midland XIV and Midland Special Limited Partner, Inc. were to receive, collectively, $2,999,700 in Tax Credits and other benefits, including potential tax losses and other incidental benefits.

33.     Upon information and belief, the allocation and receipt of the Tax Credits and potential tax losses were the material motivating factors for Midland XIV and Midland Special Limited Partner, Inc.'s investment in Kenmore Senior.

34.     Upon information and belief, the pricing model and related underwriting assumptions or considerations associated with Midland XIV and Midland Special Limited

COMPLAINT AND JURY DEMAND - 7
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

Partner, Inc.'s investment decision considered only the economic benefit of the Tax Credits and potential tax losses.

35.     Since the formation of Kenmore Senior, D.A.S.H. has successfully operated Heron Landing, and Midland XIV and Midland Special Limited Partner, Inc. (or BFIM as its successor) collectively have received $2,999,700 in Tax Credits, which provides a dollar for dollar income tax benefit, and $2,659,904 in tax losses, which provides, upon information and belief, an income tax benefit of approximately 35% of this amount.

36.     Attached as **Exhibit A** is a true and correct copy of the operative partnership agreement for Kenmore Senior, which is the Kenmore Senior Associates Limited Partnership Third Amended and Restated Agreement of Limited Partnership (the "Kenmore Senior Partnership Agreement").

37.     Pursuant to Section 8.20 of the Kenmore Senior Partnership Agreement, D.A.S.H. has a Buyout Option allowing it to purchase Midland XIV and Midland Special Limited Partner, Inc.'s (or BFIM as its successor) entire interests in Kenmore Senior.

38.     Pursuant to Section 8.20(b), D.A.S.H. may exercise this Buyout Option after expiration of the Compliance Period and for a period of one (1) year thereafter (the "Kenmore Senior Option Period").

39.     The Compliance Period for Kenmore Senior ended on December 31, 2016.

40.     D.A.S.H. exercised its Buyout Option during the Kenmore Senior Option Period.

### 2.     Kenmore Family and Heron Run.

41.     In 1998, Kenmore Family was formed with D.A.S.H. as the General Partner.

COMPLAINT AND JURY DEMAND - 8
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

42.     Midland XVI and BFIM's predecessor, Midland Special Limited Partner, Inc., collectively invested $2,226,441 in Kenmore Family so that D.A.S.H. could, on behalf of Kenmore Family as its General Partner, finance, develop, and construct Heron Run.

43.     In exchange, Midland XVI and Midland Special Limited Partner, Inc. were to receive, collectively, $2,759,724 in Tax Credits and other benefits, including potential tax losses and other incidental benefits.

44.     Upon information and belief, the allocation and receipt of the Tax Credits and potential tax losses were the material motivating factors for Midland XVI and Midland Special Limited Partner, Inc.'s investment in Kenmore Family.

45.     Upon information and belief, the pricing model and related underwriting assumptions or considerations associated with Midland XVI and Midland Special Limited Partner, Inc.'s investment decision considered only the economic benefit of the Tax Credits and potential tax losses.

46.     Since the formation of Kenmore Family, D.A.S.H. has successfully operated Heron Run, and Midland XVI and Midland Special Limited Partner, Inc. (or BFIM as its successor) collectively have $2,759,724 in Tax Credits, which provides a dollar for dollar income tax benefit, and $2,231,436 in tax losses, which provides, upon information and belief, an income tax benefit of approximately 35% of this amount.

47.     Attached as **Exhibit B** is a true and correct copy of the operative partnership agreement for Kenmore Family, which is the Kenmore Family Associates Limited Partnership Third Amended and Restated Agreement of Limited Partnership (the "Kenmore Family Partnership Agreement").

COMPLAINT AND JURY DEMAND - 9
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

48.     Pursuant to Section 8.20 of the Kenmore Family Partnership Agreement, D.A.S.H. has a Buyout Option allowing it to purchase Midland XVI and Midland Special Limited Partner, Inc.'s (or BFIM as its successor) entire interests in Kenmore Family.

49.     Pursuant to Section 8.20(b), D.A.S.H. may exercise this Buyout Option after expiration of the Compliance Period and for a period of one (1) year thereafter (the "Kenmore Family Option Period").

50.     The Compliance Period for Kenmore Family ended on December 31, 2016.

51.     D.A.S.H. exercised its Buyout Option during the Kenmore Family Option Period.

### 3.     Mountain View Family and Mountain View.

52.     In 2000, Mountain View Family was formed with D.A.S.H. as the General Partner.

53.     Midland VII and BFIM's predecessor, Midland Special Limited Partner, Inc., collectively invested $2,339,765 in Mountain View Family so that D.A.S.H. could, on behalf of Mountain View Family as its General Partner, finance, develop, and construct Mountain View.

54.     In exchange, Midland VII and Midland Special Limited Partner, Inc. were to receive, collectively, $2,999,700 in Tax Credits and other benefits, including potential tax losses and other incidental benefits.

55.     Upon information and belief, the allocation and receipt of the Tax Credits and potential tax losses were the material motivating factors for Midland VII and Midland Special Limited Partner, Inc.'s investment in Mountain View Family.

COMPLAINT AND JURY DEMAND - 10
(18-cv-138)

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

160 ia30bk16w2

56.     Upon information and belief, the pricing model and related underwriting assumptions or considerations associated with Midland VII and Midland Special Limited Partner, Inc.'s investment decision considered only the economic benefit of the Tax Credits and potential tax losses.

57.     Since the formation of Mountain View Family, D.A.S.H. has successfully operated Mountain View, and Midland VII and Midland Special Limited Partner, Inc. (or BFIM as its successor) collectively have received $2,999,700 in Tax Credits, which provides a dollar for dollar income tax benefit, and $2,059,167 in tax losses, which provides, upon information and belief, an income tax benefit of approximately 35% of this amount.

58.     Attached as **Exhibit C** is a true and correct copy of the operative partnership agreement for Mountain View Family, which is the Mountain View Family Associates Limited Partnership Amended and Restated Agreement of Limited Partnership (the "Mountain View Family Partnership Agreement").

59.     Pursuant to Section 8.20 of the Mountain View Partnership Agreement, D.A.S.H. has a Buyout Option allowing it to purchase Midland VII and Midland Special Limited Partner, Inc.'s (or BFIM as its successor) entire interests in Mountain View Family.

60.     Pursuant to Section 8.20(b), D.A.S.H. may exercise this Buyout Option after expiration of the Compliance Period and for a period of one (1) year thereafter (the "Mountain View Family Option Period").

61.     The Compliance Period for Mountain View Family ended on December 31, 2016.

PETERSON RUSSELL KELLY PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington 98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

62.     D.A.S.H. exercised its Buyout Option during the Mountain View Family Option Period.

**C.     D.A.S.H.'s Buyout Options and Buyout Notices.**

63.     Sections 8.20(c) of the Kenmore Senior Partnership Agreement, Kenmore Family Partnership Agreement, and Mountain View Family Partnership Agreement (collectively these agreements are referred to hereafter as the "Partnership Agreements") provide the mechanism to determine the price which D.A.S.H. is to pay to acquire the Investment Partnerships' entire interest in the Apartment Complexes (the "Buyout Price").

64.     Specifically, pursuant to Section 8.20(c) of the Partnership Agreements, the Buyout Price "shall be the greater of (i) all federal, state and local taxes imposed on the Investment Partnership attributable to the Buyout; or (ii) the fair market value (as of the date of the closing of the Buyout) of the Investment Partnership's Interests as determined in accordance with this Section 8.20."

65.     Sections 8.20(e) of the Partnership Agreements provide that the value of the Investment Partnerships' interests shall be determined by appraisals to "be performed by an Accredited Senior Appraiser as certified by the American Society of Appraisers and acceptable to the Investment Partnership (an 'ASA Appraiser') or an MAI certified real estate appraiser acceptable to the Investment Partnership (an 'MAI Appraiser')."

66.     Before D.A.S.H. may submit Buyout Notices under Section 8.20 of the Partnership Agreements, it must propose, through written submission, two appraisers (both shall be either an ASA Appraiser or an MAI Appraiser or both) to the Investments Partnerships

COMPLAINT AND JURY DEMAND - 12
(18-cv-138)

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

160 ia30bk16w2

1  and the Investment Partnerships must approve one or both of the proposed appraisers within

2  five (5) business days of the written submission.

3      67.    Attached as **Exhibit D** is a true and correct copy, without enclosures, of

4  D.A.S.H.'s written submission, dated October 10, 2017, proposing two appraisers pursuant to

5  Section 8.20(e) of the Kenmore Senior Partnership Agreement.

6

7      68.    Attached as **Exhibit E** is a true and correct copy, without enclosures, of

8  D.A.S.H.'s written submission, dated October 10, 2017, proposing two appraisers pursuant to

9  Section 8.20(e) of the Kenmore Family Partnership Agreement.

10      69.    Attached as **Exhibit F** is a true and correct copy, without enclosures, of

11  D.A.S.H.'s written submission, dated October 10, 2017, proposing two appraisers pursuant to

12  Section 8.20(e) of the Mountain View Family Partnership Agreement.

13

14      70.    Following receipt of D.A.S.H.'s written submissions, the Investment

15  Partnerships approved Ben Wilcox, Wilcox LaMotte Valuation & Advisory, LLC, to perform

16  appraisals of the value of the Investment Partnerships' interests in the Partnerships.

17      71.    Section 8.20(f) of the Partnership Agreements, entitled "Appraisal Process,"

18  directs the appraiser (here Mr. Wilcox), when determining the fair market value of the

19  Investment Partnerships' interests in the Partnerships, to consider the value of the Partnerships'

20  assets and give due consideration to all other relevant factors relating to the value of the

21  Investment Partnerships' interests, including but not limited to several specific considerations.

22

23      72.    After the Investment Partnerships approved Mr. Wilcox to perform an appraisal

24  of the fair market value of the Investment Partnerships' entire interests in the Partnerships,

25

COMPLAINT AND JURY DEMAND - 13
(18-cv-138)

160 ia30bk16w2

Mr. Wilcox performed his appraisals of the Investment Partnerships' entire interests in the Partnerships and delivered detailed reports to D.A.S.H.

73.     According to the appraisals, the fair market value of the Investment Partnerships' entire interests in the Partnerships are as follows:

a.     Kenmore Senior = $0.00;

b.     Kenmore Family = $0.00; and

c.     Mountain View Family = $9,000.00.

74.     Pursuant to Sections 8.20(d) of the Partnership Agreements, D.A.S.H. then exercised its Buyout Options, through Buyout Notices, under the Partnership Agreements in compliance with the terms and conditions of the Partnership Agreements, and D.A.S.H. advised the Investment Partnerships that it would close on its acquisition of the Investment Partnerships' interests on March 9, 2018.

75.     Attached as **Exhibit G** is a true and correct copy, without enclosures, of D.A.S.H.'s Buyout Notice, dated December 15, 2017, pursuant to Section 8.20(d) of the Kenmore Senior Partnership Agreement.

76.     Attached as **Exhibit H** is a true and correct copy, without enclosures, of D.A.S.H.'s Buyout Notice, dated December 15, 2017, pursuant to Section 8.20(d) of the Kenmore Family Partnership Agreement.

77.     Attached as **Exhibit I** is a true and correct copy, without enclosures, of D.A.S.H.'s Buyout Notice, dated December 15, 2017, pursuant to Section 8.20(d) of the Mountain View Family Partnership Agreement.

COMPLAINT AND JURY DEMAND - 14
(18-cv-138)

160 ia30bk16w2

**D.    The Investment Partnerships' Breaches and Anticipatory Breaches of the Partnership Agreements.**

78.    Pursuant to Sections 8.20(d) of the Partnership Agreements, if D.A.S.H.'s Buyout Notices include "appraisals or calculations which, in the reasonable opinion of the Investment Partnership, contain material errors, the notice shall not constitute an effective Buyout Notice" but the Investment Partnership has an affirmative obligation to allow D.A.S.H. to cure such alleged material errors and is required to "promptly so notify" D.A.S.H. of the material errors so that D.A.S.H. may submit a new or amended Buyout Notice during the Option Period.

79.    When D.A.S.H. delivered its Buyout Notices to the Investment Partnerships, it requested "prompt consultation" with the Investment Partnership in order to, among other things, receive from the Investment Partnership any identification of alleged material errors so that D.A.S.H. could cure the same in the event that the Investment Partnership believed there were any material errors and wanted to comply with the Partnership Agreement by providing prompt notice to D.A.S.H.

80.    In response, the Investment Partnerships rejected D.A.S.H.'s request, did not specify or identify any material errors, did not provide D.A.S.H. with any opportunity to cure any alleged material errors during the Option Period, and have indicated that they will not sell their interests in the Partnerships to D.A.S.H. as required by the Partnership Agreement and Buyout Notices.

81.    Rather, in response and to date, all that the Investment Partnerships have said in response to D.A.S.H.'s Buyout Notices is that they "do not agree with the valuation of the

Investment Partnership's interest" and that they would respond within the first three weeks of

January (which the Investment Partnerships have not done).  Attached as **Exhibit**s **J, K** and **L**

are true and correct copies of the Investment Partnerships' responses to D.A.S.H.'s Buyout

Notices.

83. D.A.S.H.'s Buyout Notices are proper, valid, effective and enforceable, and

there are no material errors in the appraisals or calculations included or contained within the

Buyout Notices.

83. D.A.S.H. is entitled to close on the Buyout Notices and acquire the Investment

Partnerships' entire interests in the Partnerships as provided by Section 8.20 of the Partnership

Agreements, but the Investment Partnerships will not transfer their interests to D.A.S.H. as

required.

### III.    COUNT I—BREACH OF CONTRACT

84. D.A.S.H. fully incorporates the above paragraphs by reference as if fully stated

herein.

85. The Partnership Agreements are valid and binding contracts.

86. The Partnership Agreements include Buyout Options, for which D.A.S.H.

provided sufficient consideration.

87. D.A.S.H. complied with the Partnership Agreements, specifically Sections 8.20

thereof, and exercised its Buyout Options thereby creating a contract for the sale of the

Investment Partnerships' entire interests in the Partnerships to D.A.S.H.

88. The Investment Partnerships have breached their contractual obligations to

D.A.S.H.

COMPLAINT AND JURY DEMAND - 16
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

89.     D.A.S.H. is entitled to, among other things, an order for specific performance requiring the Investment Partnerships to sell their interests in the Partnerships to D.A.S.H. as set-forth in the Buyout Notices.

90.     D.A.S.H. is entitled to recover any damages it incurs due to the Investment Partnerships' breaches of the Partnership Agreements.

### IV.     COUNT II—ANTICIPATORY BREACH OF CONTRACT

91.     D.A.S.H. fully incorporates the above paragraphs by reference as if fully stated herein.

92.     The Partnership Agreements are valid and binding contracts.

93.     The Partnership Agreements include Buyout Options, for which D.A.S.H. provided sufficient consideration.

94.     D.A.S.H. complied with the Partnership Agreements, specifically Sections 8.20 thereof, and exercised its Buyout Options thereby creating a contract for the sale of the Investment Partnerships' entire interests in the Partnerships to D.A.S.H.

95.     The Investment Partnerships have anticipatorily breached their contractual obligations to sell their interests to D.A.S.H. through, among other things, their responses to D.A.S.H.'s Buyout Notices; and also by indicating that they will not sell their interests to D.A.S.H. as required by the Buyout Notices, and suggesting that they will provide, or identify, alleged material errors in the appraisals or calculations contained within the Buyout Notices in a manner that is not prompt and follows expiration of the Option Period.

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

96.     D.A.S.H. is entitled to, among other things, an order for specific performance requiring the Investment Partnerships to sell their interests in the Partnerships to D.A.S.H. as set-forth in the Buyout Notices.

97.     D.A.S.H. is entitled to recover any damages it incurs due to the Investment Partnerships' anticipatory breaches of the Partnership Agreements.

## V.     COUNT III—EQUITABLE CLAIMS

98.     D.A.S.H. fully incorporates the above paragraphs by reference as if fully stated herein.

99.     The Investment Partnerships have waived any right to identify or specify any alleged material errors in the appraisals or calculations contained in D.A.S.H.'s Buyout Notices because, in part: (a) they knowingly failed to do so in response to the Buyout Notices; (b) knowingly failed to do so during the Option Period; (c) have knowingly failed to do so as stated; and (d) they have not promptly identified any alleged material errors.

100.    The Investment Partnerships should be estopped, both through equitable estoppel and promissory estoppel, from identifying or specifying any alleged material errors in the appraisals or calculations contained in D.A.S.H.'s Buyout Notices because, in part, they have failed to do so during the Option Period and have not done so since, and allowing the Investment Partnerships to do so now will be unjust and unfair to D.A.S.H. and could serve to prevent D.A.S.H. from closing on its Buyout Options as stated in the Buyout Notices.

101.    D.A.S.H. is entitled to, among other things, an order for specific performance requiring the Investment Partnerships to sell their interests in the Partnerships to D.A.S.H. as set-forth in the Buyout Notices.

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

102.    D.A.S.H. is entitled to recover any damages it incurs due to the Investment Partnerships' anticipatory breaches of the Partnership Agreements.

## VI.    COUNT IV—DECLARATORY JUDGMENT

103.    D.A.S.H. fully incorporates the above paragraphs by reference as if fully stated herein.

104.    An actual controversy exists as to the Buyout Notices, specifically concerning the appraisals or calculations contained therein, and D.A.S.H.'s right to acquire the Investment Partnerships' interests in the Partnerships pursuant to the Buyout Notices.

105.    The Partnership Agreements are valid and binding contracts.

106.    The Partnership Agreements include Buyout Options, for which D.A.S.H. provided sufficient consideration.

107.    D.A.S.H. complied with the Partnership Agreements, specifically Sections 8.20 thereof, and exercised its Buyout Options thereby creating a contract for the sale of the Investment Partnerships' entire interests in the Partnerships to D.A.S.H.

108.    There are no material errors in the appraisals or calculations contained within the Buyout Notices, but the Investment Partnerships have stated that they do not agree with the valuation of their interests and indicated that they will not sell their interests to D.A.S.H. pursuant to the Buyout Notices.

109.    D.A.S.H. is entitled to a declaration, pursuant to 28 U.S.C. § 2201(a), as follows:

a.    D.A.S.H.'s exercise of its Buyout Options is valid, effective and enforceable; and

COMPLAINT AND JURY DEMAND - 19
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY  PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

b.      the Investment Partnerships must sell, pursuant to the Buyout Notices,

their entire interests in the Partnerships to D.A.S.H.

## VII.    JURY DEMAND

D.A.S.H. respectfully demands a jury on all issues so triable.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, D.A.S.H. respectfully prays for the following relief:

1.      That the Court order specific performance by the Investment Partnerships, pursuant to Section 8.20 of the Partnership Agreements, to sell their entire interests to D.A.S.H. as set-forth in D.A.S.H.'s Buyout Notices;

2.      That the Court issue a declaration that:

a.      D.A.S.H.'s exercise of its Buyout Options is valid, effective and enforceable; and

b.      the Investment Partnerships must sell, pursuant to the Buyout Notices, their entire interests in the Partnerships to D.A.S.H.

3.      That the Court order such other and further relief, including, without limitation, monetary relief and attorneys' fees and costs, which the Court may deem just, equitable and appropriate under the circumstances presented.

///

///

///

///

///

COMPLAINT AND JURY DEMAND - 20
(18-cv-138)

160 ia30bk16w2

PETERSON RUSSELL KELLY PLLC
10900 NE Fourth Street, Suite 1850
Bellevue, Washington  98004-8341
Ph: (425) 462-4700 Fax: (425) 451-0714

1       Respectfully submitted January 30, 2018.

2                                    PETERSON RUSSELL KELLY PLLC

3                                    By      /s/ Michael T. Callan
4                                            Michael T. Callan, WSBA # 16237

5                                    Peterson Russell Kelly PLLC
                                     10900 NE 4th Street, Suite 1850
6                                    Bellevue, WA 98004-8341
                                     Ph:     (425) 462-4700
7                                    Email: mcallan@prklaw.com
8                                    Attorneys for Plaintiff
                                     Downtown Action to Save Housing
9

10                                   WINTHROP & WEINSTINE, P.A.

11                                   David A. Davenport, MN Bar No.: 285109
12                                   Quin C. Seiler, MN Bar. No: 396699
                                     225 South Sixth Street, Suite 3500
13                                   Minneapolis, MN 55402
                                     Ph:     (612) 604-6716
14                                   Email:
                                     ddavenport@winthrop.com
15                                   qseiler@winthrop.com

16
                                     Attorneys for Plaintiff
17                                   Downtown Action to Save Housing

18                                   *Pro Hac Vice Applications Pending*

19

20

21

22

23

24

25